Charles Wallace
3723 Foothill Blvd.
Oroville, CA 95966
(346) 249-1507
realcharleswallace@gmail.com
Plaintiff Charles Wallace, In Propria Persona

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHARLES WALLACE, formerly known as CHARLES LEE ATCHISON,<br>Plaintiff,<br><br>v.<br><br>SCALE AI, INC., et al.,<br>Defendants. | Case No. 3:26-cv-12797-AGT<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT HIREART, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**<br><br>Hearing date: December 11, 2026<br>Time: 10:00 a.m.<br>Courtroom A, 15th Floor<br>Judge: Hon. Alex G. Tse |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . 1

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Remotasks Contributor Period Before the HireArt Placement . . . . . . . . . . . . . 2

B. The HireArt Placement (February 26, 2024 to About October 3–5, 2025) . . . . 3

C. Direct Employment by Scale (From October 6, 2025) . . . . . . . . . . . . . . . . . . . 3

D. The Agreement HireArt Offers, and What Its Papers Leave Out . . . . . . . . . . . 3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. Formation Is for the Court, and HireArt Has Not Proved an Agreement by a Preponderance of the Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1. Because Plaintiff disputes formation, HireArt must prove an agreement by a preponderance of the evidence, and it has not done so. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2. Formation cannot be delegated to an arbitrator. . . . . . . . . . . . . . . . . . . . . 8

3. Under the agreement’s own terms, acceptance depended on the absence of a timely opt-out, and HireArt is silent about its opt-out records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4. HireArt cannot rely on an unproduced June 4, 2025 version. . . . . . . . . . 12

5. HireArt has not shown what Exhibit E is. . . . . . . . . . . . . . . . . . . . . . . . 12

B. These Challenges Are Directed Specifically to the Delegation Provision . . . . 14

C. On This Record the Court Should Deny the Motion or Hold It in Abeyance, Order Production, Permit Limited Discovery, and Set a Hearing or Summary Trial Under 9 U.S.C. § 4 . . . . . . . . . . . . . . . . . . . . . . . 15

D. The Motion Reaches, at Most, Claims Against HireArt Arising From the Placement Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

E. Scale Cannot Obtain Arbitration Through HireArt’s Motion . . . . . . . . . . . . . 18

F. The Court Should Not Dismiss, and Any Stay Should Reach Only the Claims Compelled to Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

Page

**Cases**

Ahlstrom v. DHI Mortg. Co., 21 F.4th 631 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . 8

Armstrong v. Michaels Stores, Inc., 59 F.4th 1011 (9th Cir. 2023) . . . . . . . . . . . . . . . 20

Beecher v. Wallace, 381 F.2d 372 (9th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Bell v. Macy's Corp. Servs., No. 20-CV-60338, 2020 WL 6054078 (S.D. Fla. Oct. 13, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bell v. Macy's Corp. Servs., No. 20-CV-60338, 2020 WL 7016865 (S.D. Fla. July 24, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Brennan v. Opus Bank, 796 F.3d 1125 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 14

Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cabrera v. CVS Rx Servs., Inc., No. C 17-05803 WHA, 2018 WL 1367323 (N.D. Cal. Mar. 16, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CMB Infrastructure Grp. IX, LP v. Cobra Energy Inv. Fin., Inc., 572 F. Supp. 3d 950 (D. Nev. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Coinbase, Inc. v. Suski, 602 U.S. 143 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Condee v. Longwood Mgmt. Corp., 88 Cal. App. 4th 215 (2001) . . . . . . . . . . . . . . . 6, 7

Dolan v. Nationstar Mortg. LLC, No. 25-cv-2242-GPC-BJW, 2025 WL 3649273 (S.D. Cal. Dec. 16, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Garcia v. Pexco, LLC, 11 Cal. App. 5th 782 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Garren v. CVS Health Corp., No. 3:17-cv-149, 2018 WL 3377327 (E.D. Tenn. July 11, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Glass v. Tradesmen Int'l, LLC, No. 5:19-CV-01331, 2020 WL 5798018 (N.D. Ohio Sept. 29, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010) . . . . . . . . . . . . . . . . 8

Greenfield Advisors LLC v. Salas, 733 F. App'x 364 (9th Cir. 2018) . . . . . . . . . . . . . 22

Haasbroek v. Princess Cruise Lines, Ltd., 286 F. Supp. 3d 1352 (S.D. Fla. 2017) . . . . . . 20
Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667 (9th Cir. 2021) . . . . . . 7, 15
Harris v. Superior Court, 188 Cal. App. 3d 475 (1986) . . . . . . 19, 20
Knutson v. Sirius XM Radio Inc., 771 F.3d 559 (9th Cir. 2014) . . . . . . 7, 13, 18
Kramer v. Toyota Motor Corp., 705 F.3d 1122 (9th Cir. 2013) . . . . . . 22, 23
Marina Tenants Ass'n v. Deauville Marina Dev. Co., 181 Cal. App. 3d 122 (1986) . . . . . . 19
Mendez v. LoanMe, Inc., No. 20-cv-00002-BAS-AHG, 2020 WL 6044098 (S.D. Cal. Oct. 13, 2020) . . . . . . 9, 11
Mendez v. LoanMe, Inc., No. 20-cv-00002-BAS-AHG, 2020 WL 6741676 (S.D. Cal. Nov. 17, 2020) . . . . . . 15
Michaelis v. Schori, 20 Cal. App. 4th 133 (1993) . . . . . . 19
Morgan v. Sundance, Inc., 596 U.S. 411 (2022) . . . . . . 20
Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) . . . . . . 24
Najarro v. Superior Court, 70 Cal. App. 5th 871 (2021) . . . . . . 8
Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63 (2010) . . . . . . 14
Richards v. Harper, 864 F.2d 85 (9th Cir. 1988) . . . . . . 22
Rickes v. Thermo Fisher Sci., Inc., No. 25-5138, 2026 WL 2255243 (9th Cir. Aug. 5, 2026) . . . . . . 12
Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394 (1996) . . . . . . 7
Sanders v. Am. Cas. Co., 269 Cal. App. 2d 306 (1969) . . . . . . 19
Schuster v. Scale AI, Inc., No. 3:25-cv-00620-JSC (N.D. Cal. Aug. 25, 2025) . . . . . . 15
Smith v. Spizzirri, 601 U.S. 472 (2024) . . . . . . 24
Taylor v. Uber Techs. Inc., No. 24-cv-02164-AGT, 2025 WL 1474492 (N.D. Cal. May 22, 2025) . . . . . . 11, 16
Thomas v. JPMorgan Chase & Co., No. C20-5902 BHS, 2021 WL 107057 (W.D. Wash. Jan. 6, 2021) . . . . . . 9

Whidbee v. Pierce County, 857 F.3d 1019 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . 22
Williams v. King, 875 F.3d 500 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Statutes**

9 U.S.C. § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25
9 U.S.C. § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
28 U.S.C. § 636 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
28 U.S.C. § 1448 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Rules**

Fed. R. Civ. P. 7.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Fed. R. Civ. P. 73 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Fed. R. Civ. P. 81 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Fed. R. Evid. 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Fed. R. Evid. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
Fed. R. Evid. 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
Fed. R. Evid. 1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Local Rules**

N.D. Cal. L.R. 7-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
N.D. Cal. L.R. 7-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant HireArt, Inc. ("HireArt") asks the Court to compel arbitration of "all claims alleged in the Complaint" (ECF No. 7 at 2) and, in its memorandum, to "dismiss the proceedings" or, "in the alternative," stay them (ECF No. 7-3 at 22). Its evidence is a declaration from its Head of Human Resources and an undated eight-page exhibit that she swears is a "true and correct copy of Plaintiff's signed Arbitration Agreement." ECF No. 7-2 ¶ 21. It is not. The exhibit's name field reads "Charles Wallace," a name Plaintiff did not have on February 22, 2024, above a handwritten signature in his former name, and HireArt's own log records that signature as "Charles Atchison." Id. at 25, 27; Declaration of Charles Wallace ("Wallace Decl.") ¶¶ 1, 13. That evidence concerns, at most, one of the three periods in which Plaintiff worked and one of the two named defendants. It says nothing about the agreement's 30-day opt-out. Plaintiff opted out. Wallace Decl. ¶ 5. He asked HireArt's counsel for HireArt's opt-out records the day before the motion was filed, HireArt attached that request to its own motion, and HireArt has produced no opt-out records and no audit trail. ECF No. 7-1, Ex. A; Wallace Decl. ¶¶ 8–9.

The motion cannot be granted on this record. HireArt must prove by a preponderance of the evidence that an agreement to arbitrate was formed, and formation is for the Court. Under the agreement's own terms, mutual acceptance of the arbitration provision depended on the absence of a timely opt-out, and the records that would show HireArt's receipt of Plaintiff's opt-out are in HireArt's exclusive control. HireArt neither produced them at Plaintiff's request nor filed them with its motion. The motion should be denied. If HireArt disputes the opt-out in its reply, the Federal Arbitration Act calls for a trial of that question, not an order compelling arbitration, and the Court should hold the motion in abeyance and order the production, limited discovery and hearing described in Part III.C. Defendant Scale AI, Inc. ("Scale") removed this action together with HireArt,

through the same counsel, did not join this motion, and at a November 19, 2026 meet-and-confer stated that it intends to file a separate motion to compel arbitration. Wallace Decl. ¶ 15. If any claim is compelled, the order and any stay should reach only that claim, as shown in Parts III.D and III.F.

Issues to be decided (Civil L.R. 7-4(a)(3)): (1) whether HireArt has proved, by a preponderance of the evidence, that an agreement to arbitrate was formed with Plaintiff, including whether a timely opt-out was made and which version of the agreement applies; (2) whether, if formation is disputed, the Court should hold the motion in abeyance and order production, limited discovery, and a hearing or summary trial under 9 U.S.C. § 4; (3) whether any such agreement reaches claims arising before or after the HireArt placement, or claims against Scale, and whether Scale has waived any right to compel arbitration under HireArt's agreement; and (4) whether, if any claim is arbitrable, only the claims compelled to arbitration should be stayed, and not dismissed.

## II. STATEMENT OF FACTS

The complaint describes three successive periods of work. Compl. ¶ 2 (ECF No. 1-1 at 7). HireArt's motion and evidence address only the second.

### A. Remotasks Contributor Period Before the HireArt Placement

The complaint alleges that, before the HireArt placement, Plaintiff performed contributor work on the Remotasks platform, beginning on or about October 2023, with the exact first day according to proof. Compl. ¶ 2(a) (ECF No. 1-1 at 7). That October 2023 start date was mistaken. After Plaintiff received access, Plaintiff located PayPal records of the payments for that work; they show when he was paid, not the days he worked. They are labeled "Paid by Outlier" and are dated January 23 and February 2, 6, 13, 20 and 27, 2024. Wallace Decl. ¶ 2 & Ex. 2. As Plaintiff recalls, the work began roughly one week before the first payment, on or about January 16, 2024, and ended on

or about February 25, 2024. Wallace Decl. ¶ 2. HireArt's declarant states that Plaintiff created his HireArt Portal account on or about February 22, 2024. ECF No. 7-2 ¶ 7. Neither HireArt's declaration nor its memorandum mentions this period.

**B. The HireArt Placement (February 26, 2024 to About October 3–5, 2025)**

On or about February 22, 2024, HireArt sent an onboarding email to Plaintiff's then email address, cha911@g.harvard.edu, and Plaintiff completed HireArt's online onboarding that day. ECF No. 7-2 ¶¶ 13, 19, 21–22; Wallace Decl. ¶ 3. Beginning on or about February 26, 2024, HireArt employed Plaintiff to work with Scale. ECF No. 7-2 ¶ 25; Compl. ¶ 2(b). HireArt's declarant says the placement ended on or about October 3, 2025 (ECF No. 7-2 ¶ 25); the complaint says October 5, 2025 (Compl. ¶ 2(b)). The difference does not matter to this motion.

**C. Direct Employment by Scale (From October 6, 2025)**

From October 6, 2025 until on or about March 13, 2026, Scale employed Plaintiff directly, not through HireArt. Compl. ¶ 2(c); Wallace Decl. ¶ 4. HireArt's declarant says only that its records show Plaintiff was "Converted to internal" by Scale after October 3, 2025 (ECF No. 7-2 ¶ 8), and its memorandum describes the placement as running "from February 26, 2024 through October 5, 2025." ECF No. 7-3 at 21.

**D. The Agreement HireArt Offers, and What Its Papers Leave Out**

HireArt relies on an "Employment Agreement & Arbitration Agreement" that its declarant says Plaintiff "opened, reviewed, and digitally signed" on February 22, 2024. ECF No. 7-2 ¶ 21 & Ex. E. Exhibit E is an eight-page web rendering. ECF No. 7-2 at 18–25. Its last page ends with a form headed "Sign employment agreement." A "Name" box shows the typed name "Charles Wallace"; below it, a "Signature" box holds a handwritten signature, which is the signature Plaintiff used as Charles Atchison. Id. at 25; Wallace Decl. ¶ 13. The page bears no date or time, and HireArt filed no Dropbox Sign

audit trail for this document. Its only record of signing this agreement is Exhibit F, an excerpt of an onboarding log. Exhibit F lists four Dropbox Sign requests, none of them this agreement. ECF No. 7-2 at 27. Plaintiff's own copies of those four documents each end with a Dropbox Sign audit trail showing when the document was sent, viewed and signed. Wallace Decl. ¶ 11 & Ex. 4. The Handbook and the Code of Business Ethics and Conduct he signed that day each show the name Charles Atchison, the date 02/22/2024 and a document ID. Id. That Code states that an employee's signed acknowledgment "is kept on file in the HireArt platform as part of an employee's personnel file." Ex. 4 at 3. Exhibit F records the employment-agreement signature only as a timestamp and a typed name, "Charles Atchison," and shows no entry for opening or reviewing the agreement. ECF No. 7-2 at 27. HireArt's portal preserved more for the offer letter Plaintiff signed two minutes earlier, which reads "Charles Atchison" and "Signed: 22 February 2024 at 9:17 AM EST." Id. at 16 (Ex. D); see id. at 27 (offer signed 09:17:11; employment agreement 09:19:14). Exhibit E prints neither that name nor any date. The copy of the same offer letter that HireArt's portal gave Plaintiff on November 11, 2026 shows the name Charles Wallace and no signing date, and the portal's document list that day showed a single "Employment Agreement." Wallace Decl. ¶ 12 & Ex. 5. The copy of that agreement that the portal gave Plaintiff ends the same way as Exhibit E: the name Charles Wallace, the signature he used as Charles Atchison, no date and no audit trail. Wallace Decl. ¶ 12 & Ex. 8. Plaintiff used the name Charles Atchison in February 2024, and his name was legally changed to Charles Wallace on June 3, 2024. Wallace Decl. ¶ 1; Compl. ¶ 9 (ECF No. 1-1 at 9). HireArt support updated Plaintiff's profile on April 17, 2025, after its system had shown the name Harris in error. Wallace Decl. ¶ 1 & Ex. 3. HireArt does not explain why the exhibit it calls the 2024 agreement bears the later name. A page that displays a name Plaintiff did not yet have is not a copy of the document as it stood when he signed it.

Exhibit E makes the opt-out part of acceptance: "If I do not opt out within 30 days

of your receipt of this agreement, continuing my relationship with the Company constitutes mutual acceptance of the terms of this arbitration agreement by me and the Company." ECF No. 7-2 at 23 (§ 10.A). An employee may opt out by fax or "by sending an email to info@hireart.com stating my intention to opt out." Id. Section 11.B provides: "No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the President of the Company and me." Id. at 25. Nothing in the agreement extends it to work performed before it was received.

HireArt's declarant also states that HireArt "updated its arbitration agreement on June 4, 2025." ECF No. 7-2 ¶ 24. HireArt did not file that version, and the declaration does not say that it was sent to, received by or signed by Plaintiff. HireArt has never given Plaintiff a copy of it, and he does not know what document its declarant is referring to. Wallace Decl. ¶ 10.

On November 4, 2026, the day before HireArt filed its motion, Plaintiff asked HireArt's counsel for the complete arbitration agreement "with the electronic-signature audit trail showing when it was sent to me, opened and signed," and for HireArt's records of arbitration opt-out notices received at info@hireart.com and at the opt-out fax number from February 22 through March 31, 2024, including any message from charles.atchison@contractors.scale.com or cha911@g.harvard.edu. ECF No. 7-1, Ex. A; Wallace Decl. ¶ 8 & Ex. 1. HireArt filed that email with its motion. ECF No. 7-1 ¶¶ 3–4 & Ex. A. Neither its declaration nor its memorandum mentions an opt-out, describes any search of its opt-out records, or states whether any opt-out was received from Plaintiff. See ECF Nos. 7-2, 7-3.

Plaintiff opted out. He did so by email within the first month after he signed the agreement, from either his university account or his Scale-issued contractor account, and sent the email to info@hireart.com. Wallace Decl. ¶ 5. He cannot recall the exact date or

wording of his email, has no copy of it, and no longer has access to either account. Id. ¶¶ 5–7. Harvard has since confirmed that the university account was purged and cannot be restored. Id. ¶ 7 & Ex. 6. The record of HireArt's receipt of that message is in HireArt's exclusive control. Any sent copy would have been in the university account, which no longer exists, or in the contractor account that Scale issued. Wallace Decl. ¶ 7.

Scale and HireArt together removed this action on October 29, 2026, through the same counsel. ECF No. 1 at 2, 6. The notice of removal states that Scale "has not yet been served with the Complaint." Id. ¶ 19. HireArt's memorandum repeats that Scale "has not yet been served." ECF No. 7-3 at 21. Plaintiff served Scale with the summons and complaint on November 12, 2026. Wallace Decl. ¶ 14 & Ex. 7. Scale has not filed or joined the motion. The case is assigned to a Magistrate Judge, who may conduct all proceedings only "with written consent of all parties." ECF No. 9 at 1. Page 2 of HireArt's notice lists a hearing on December 4, 2026, in the Central District of California, while the notice's caption and the docket set the hearing for December 11, 2026, at 10:00 a.m. in this District. ECF No. 7 at 1–2. Plaintiff relies on the docketed setting.

## III. ARGUMENT

### A. Formation Is for the Court, and HireArt Has Not Proved an Agreement by a Preponderance of the Evidence

#### 1. Because Plaintiff disputes formation, HireArt must prove an agreement by a preponderance of the evidence, and it has not done so.

HireArt characterizes its burden as "slight," citing Condee v. Longwood Mgmt. Corp., 88 Cal. App. 4th 215, 218–19 (2001). ECF No. 7-3 at 14. Condee addresses only a petitioner's initial showing under California's petition procedure: the petitioner "need only allege the existence of an agreement and support the allegation" by attaching it or

setting out its terms. 88 Cal. App. 4th at 219. Condee added that the burden then shifted to the respondents "to prove the falsity of the purported agreement." Id. Plaintiff's dispute is not limited to falsity; it is whether acceptance occurred under the agreement's own terms, which is part of the existence of an agreement. Once the opposing party puts formation in dispute, the party seeking arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (citing Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 413 (1996)). Plaintiff has done so here.

HireArt's proof of which agreement it relies on is also incomplete. Its declarant calls Exhibit E the agreement Plaintiff signed on February 22, 2024, and states that HireArt "updated its arbitration agreement on June 4, 2025" (ECF No. 7-2 ¶¶ 21, 24). But Exhibit E is undated, and its signature block bears a different name from the one HireArt's log records for that signing (compare id. at 25 (Ex. E), with id. at 27 (Ex. F)). If HireArt relies on the June 2025 version, it has not produced it or any evidence that Plaintiff received or accepted it. And the agreement provides that "[n]o modification of or amendment to this Agreement ... will be effective unless in writing signed by the President of the Company and me" (id. at 25 (Ex. E § 11.B)), and HireArt offers no such writing.

In federal court, the procedure is governed by 9 U.S.C. § 4 rather than California's petition procedure, while state law governs formation: "State contract law controls whether the parties have agreed to arbitrate." Knutson, 771 F.3d at 565. Where formation is disputed, courts apply the summary-judgment standard, and if a genuine dispute of material fact exists, the court must proceed to a trial of that issue. Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021); 9 U.S.C. § 4.

**2. Formation cannot be delegated to an arbitrator.**

Exhibit E states that the arbitrator "shall have the exclusive authority to decide gateway issues, including but not limited to arbitrability, waiver, and scope of coverage." ECF No. 7-2 at 22. That sentence does not mention formation, and it could not reach formation if it did. A court may order arbitration only when it is satisfied that the formation of the parties' arbitration agreement is not in issue; where formation is contested, the court must decide it. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297, 299–300 (2010). The Ninth Circuit has held that issues of contract formation cannot be delegated to the arbitrator. Ahlstrom v. DHI Mortg. Co., 21 F.4th 631, 635 (9th Cir. 2021). The statute says the same: "If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. HireArt also argues that adopting the AAA Employment Rules delegates any challenge to the "existence, scope, or validity of the arbitration agreement." ECF No. 7-3 at 13. That argument fails for the same reason. A rule incorporated by an agreement cannot apply unless the agreement was formed, and Ahlstrom requires the court to decide any challenge to whether an agreement to arbitrate exists at all. 21 F.4th at 635. HireArt offers its incorporation cases as showing intent to delegate "issues of arbitrability," under a heading about "Contract Defenses." ECF No. 7-3 at 13. Najarro v. Superior Court, 70 Cal. App. 5th 871 (2021), which HireArt cites (ECF No. 7-3 at 13–14), supports Plaintiff. The clause there expressly gave the arbitrator power over "formation," a word absent from Exhibit E's delegation sentence, and the court still held that, "[d]espite the existence of a clear and unmistakable delegation clause, a court remains able to determine" whether any agreement between the parties was ever concluded. Id. at 889. In this Court, Ahlstrom controls.

### 3. Under the agreement's own terms, acceptance depended on the absence of a timely opt-out, and HireArt is silent about its opt-out records.

> Opt Out: Arbitration is not a mandatory condition of my relationship with the Company, and therefore I may submit a statement notifying the Company that I wish to opt out and not be subject to this arbitration agreement. If I want to opt out, I must notify the Company of my intention to opt out by submitting a signed and dated statement on an "Arbitration Agreement Opt Out Form" that can be obtained from and returned to ([Fax] +1-646-893-5981) or by submitting a written notice to Company ([Fax] +1-646-893-5981) stating that I am opting out of this arbitration agreement. I also may opt out by sending an email to info@hireart.com stating my intention to opt out. In order to be effective, my opt out notice must be provided within 30 days of my receipt of this agreement. If I opt out as provided in this paragraph, I will not be subject to any adverse action as a consequence of that decision and may pursue available legal remedies without regard to this arbitration agreement. If I do not opt out within 30 days of your receipt of this agreement, continuing my relationship with the Company constitutes mutual acceptance of the terms of this arbitration agreement by me and the Company.

ECF No. 7-2 at 23 (Ex. E § 10.A).

By its terms, the arbitration agreement became a mutual agreement only if Plaintiff did not opt out within 30 days and then continued working. An employee who opted out would "not be subject to this arbitration agreement." Id. Whether a timely opt-out was made is therefore part of whether an agreement to arbitrate was formed, and it is for the Court. HireArt dates Plaintiff's receipt and signature to February 22, 2024 (ECF No. 7-2 ¶¶ 13, 21), so the opt-out period ran to about March 23, 2024. Plaintiff opted out by email within the first month after he signed. Wallace Decl. ¶ 5.

HireArt has offered no evidence on that question. Courts addressing a disputed opt-out treat it as part of formation, which the party seeking arbitration must prove. See Mendez v. LoanMe, Inc., No. 20-cv-00002-BAS-AHG, 2020 WL 6044098 (S.D. Cal. Oct. 13, 2020) (ECF No. 14 at 7 n.5, 9, 11) (whether plaintiff timely opted out "is not a question of the agreement's validity, but rather whether or not an agreement was formed at all"; "given the parties' conflicting account, the Court cannot infer Plaintiff's consent"; denying motion without prejudice and setting evidentiary hearing); Thomas v. JPMorgan

Chase & Co., No. C20-5902 BHS, 2021 WL 107057 (W.D. Wash. Jan. 6, 2021) (ECF No. 25 at 4–6) (party seeking to compel arbitration "bears the burden of proof"; denying motion without prejudice and directing a discovery plan to determine whether any genuine dispute exists). In Thomas and in Bell, the party seeking arbitration at least filed a declaration about its opt-out records. Thomas, ECF No. 25 at 2, 4–5. Bell treated such a declaration as that party's initial showing on the opt-out. Bell v. Macy's Corp. Servs., No. 20-CV-60338, 2020 WL 7016865, at *4 (S.D. Fla. July 24, 2020) (ECF No. 69 at 8) (defendants "meet their initial burden on the opt-out issue, for summary judgment purposes, by providing a declaration"), report and recommendation adopted, Bell v. Macy's Corp. Servs., No. 20-CV-60338, 2020 WL 6054078, at *6 (S.D. Fla. Oct. 13, 2020) (ECF No. 74 at 12) ("Defendants must show that Mr. Bell did not mail an opt-out letter postmarked within 30 days of his hire date."); see also Glass v. Tradesmen Int'l, LLC, No. 5:19-CV-01331, 2020 WL 5798018 (N.D. Ohio Sept. 29, 2020) (ECF No. 43 at 13) (after evidentiary hearing, employer "met its burden to show that [the employee] never opted out"). HireArt has not made even that showing. Its declarant, who describes HireArt's portal and Plaintiff's onboarding records in detail, does not say that HireArt searched the info@hireart.com mailbox, the opt-out fax line or any opt-out log, or that no opt-out was received from Plaintiff. HireArt was able to retrieve and file the February 22, 2024 message its system sent to cha911@g.harvard.edu, with its delivery status. ECF No. 7-2 at 10 (Ex. A). It says nothing about any message its systems received from that address, or from the contractor address, in the 30 days that followed. HireArt filed its motion the day after Plaintiff made a specific written request to its counsel for exactly those records. ECF No. 7-1, Ex. A. Those records are in HireArt's exclusive control, and Plaintiff no longer has access to the accounts from which he states he sent his opt-out. Wallace Decl. ¶¶ 5–7. On this record HireArt has not shown by a preponderance of the evidence that mutual acceptance occurred. Plaintiff has sworn that he opted out, id. ¶ 5, and the Court need not resolve that question to deny the motion. At a minimum it is a genuine dispute, and it cannot be resolved against Plaintiff on a record from which the

movant has left out its own records.

Nor can HireArt recast the opt-out as a defense Plaintiff must prove. Under § 10.A, acceptance occurs only if the employee does "not opt out within 30 days" and continues working; a timely opt-out means there was no acceptance. See Mendez, 2020 WL 6044098, ECF No. 14 at 8 (although plaintiff electronically signed, his signature "would constitute acceptance of the Arbitration Provision only if Plaintiff failed to exercise the opt-out procedure made available to him"); Garren v. CVS Health Corp., No. 3:17-cv-149, 2018 WL 3377327 (E.D. Tenn. July 11, 2018) (ECF No. 28 at 9, 12) ("The only disputed element of contract formation in this matter is mutuality of assent"; plaintiff "met his burden of showing a genuine issue of material fact as to whether he opted out"; ordering "a trial on the existence of an agreement to arbitrate").

This Court has applied that framework to a dispute over assent. In Taylor, the Court used the summary-judgment standard, permitted targeted discovery "related to whether Taylor consented to the arbitration agreement," and, when it later compelled arbitration, stayed the case. Taylor v. Uber Techs. Inc., No. 24-cv-02164-AGT, 2025 WL 1474492, at *1, *6 (N.D. Cal. May 22, 2025) (Dkt. 45 at 1–2, 13). The plaintiff's testimony there, a denial that he ever agreed, was "uncorroborated and conclusory" when set against the company's records of his assent. Id. at *4 (Dkt. 45 at 10). Here the movant has offered no record of any kind on the opt-out, and Plaintiff testifies to a specific act: an email stating that he opted out, sent within the first month after he signed. Wallace Decl. ¶ 5. A sworn account of that kind creates a genuine dispute even against an employer's declarations that it has no record of an opt-out. Garren, ECF No. 28 at 4, 9–10. HireArt's records about Plaintiff have also been wrong before: its system showed his last name as "Harris," a name he has never used, until he asked support to correct it. Wallace Decl. ¶ 1 & Ex. 3. The "signed Arbitration Agreement" HireArt filed as Exhibit E prints Plaintiff's name as "Charles Wallace" (ECF No. 7-2 ¶ 21 & at 25), yet HireArt's own onboarding

log records the February 22, 2024 employment signature name as “Charles Atchison” (id. at 27 (Ex. F)), and Plaintiff’s name was not changed to Wallace until June 3, 2024. HireArt has not shown that Exhibit E is the document as it existed when Plaintiff signed on February 22, 2024. A search of those records that finds no opt-out would not establish that none was sent.

**4. HireArt cannot rely on an unproduced June 4, 2025 version.**

HireArt’s declarant mentions a June 4, 2025 “update” to its arbitration agreement. ECF No. 7-2 ¶ 24. HireArt did not file that version. Its declarant does not say that it was ever sent to Plaintiff or signed by him. HireArt has never given Plaintiff that version. Wallace Decl. ¶ 10. HireArt’s portal lists a single “Employment Agreement” among Plaintiff’s documents. Wallace Decl. ¶ 12 & Ex. 5. HireArt also offers no amendment signed by its President, which § 11.B requires for any modification. ECF No. 7-2 at 25. A version that is not before the Court, and that HireArt does not claim Plaintiff accepted, cannot supply an agreement that the 2024 record does not prove. Even where an employer proved that it emailed an arbitration agreement, the employee’s continued employment after an unexercised opt-out period was “not enough to establish mutual assent” without proof that he saw it. Rickes v. Thermo Fisher Sci., Inc., No. 25-5138, 2026 WL 2255243, at *1 (9th Cir. Aug. 5, 2026) (mem.).

**5. HireArt has not shown what Exhibit E is.**

Plaintiff does not deny that he signed HireArt’s agreement in February 2024. See Compl. ¶ 24 (ECF No. 1-1 at 12) (“Plaintiff signed it.”); Wallace Decl. ¶ 5. The complaint recites the 30-day opt-out without alleging whether it was exercised. That silence is not an admission, and under § 10.A signing did not itself complete acceptance. But HireArt’s declarant swears that Exhibit E is “[a] true and correct copy of Plaintiff’s signed Arbitration Agreement.” ECF No. 7-2 ¶ 21. The exhibit itself shows otherwise. Its name field reads “Charles Wallace,” a name Plaintiff did not have until June 2024.

HireArt's own log records the February 22, 2024 signature under the name "Charles Atchison," and the handwritten signature on the page is the one Plaintiff used under that former name. Id. at 25, 27; Wallace Decl. ¶¶ 1, 13. Exhibit E is therefore not a copy of the document as it stood when Plaintiff signed it. It is a page generated later, bearing a name that did not exist on the signing date. It bears no date, and HireArt filed no audit trail or stored copy for it. HireArt's Exhibit G shows the same thing. It is a screenshot of Plaintiff's own portal account, displayed under the name "Charles Wallace," in a browser whose bookmarks bar reads "HireArt Admin." ECF No. 7-2 at 29. Plaintiff did not take it. Wallace Decl. ¶ 13. Yet HireArt's declarant swears that no one at HireArt can "gain any access to or perform any action in an employee's account." ECF No. 7-2 ¶ 15. HireArt's exhibits are present-day views of its portal, not stored records of what Plaintiff was shown in February 2024. It is HireArt's burden to prove what Plaintiff was shown and signed on February 22, 2024; it is not Plaintiff's burden to prove that the wording changed. Knutson, 771 F.3d at 565. HireArt has not established that Exhibit E is the text Plaintiff received on February 22, 2024, rather than a later rendering or the unproduced June 2025 version. Because the terms of the operative agreement, including its opt-out paragraph, determine whether and when an agreement was formed, this is a further reason HireArt has not carried its burden. Plaintiff also objects to (1) the statement in ¶ 21 of HireArt's declaration that Plaintiff opened and reviewed the agreement, for lack of foundation (Fed. R. Evid. 602), because Exhibit F shows only a signature timestamp; (2) ¶ 24's description of what the unproduced June 4, 2025 version "required," which is offered to prove the content of a writing that is not before the Court (Fed. R. Evid. 1002); and (3) Exhibit E as the document signed on February 22, 2024, absent evidence sufficient to show that it is what HireArt says it is (Fed. R. Evid. 901(a)). Plaintiff further objects to the statement in ¶ 22 that Exhibit F is "the onboarding events timeline in the HireArt platform showing Plaintiff used his unique username and password to login," because the page filed is a cropped image of a data record that shows no login entry and no username (ECF No. 7-2 at 27; Fed. R. Evid. 602, 1002). Plaintiff does not object to

Exhibit F itself, and asks that HireArt be required to file the complete record from which it was taken. See Fed. R. Evid. 106. Plaintiff objects to Exhibit G, and to the statement in ¶ 22 that it is a screenshot reflecting Plaintiff's completion of the onboarding process, for lack of foundation and authentication (Fed. R. Evid. 602, 901(a)). The screenshot bears no date; it does not show when or by whom it was captured, which onboarding or which version of any agreement it depicts, or any entry for an arbitration agreement; it displays the account under a name Plaintiff did not have in February 2024; and its "Sign Documents" entry appears in gray, unlike every other entry. ECF No. 7-2 at 29. The same objection applies to Exhibit C, an undated screenshot of an "Offers" page. Id. at 14. Plaintiff also objects to the statements that HireArt employees' "employment was governed by" the agreement (¶ 20), that Plaintiff's signature was provided to "agree to" it (¶ 22), and that Plaintiff "agreed to" it and both versions "required arbitration of covered claims" (¶ 24), which are legal conclusions. ECF No. 7-2 ¶¶ 20, 22, 24; Civil L.R. 7-5(b).

**B. These Challenges Are Directed Specifically to the Delegation Provision**

A party resisting arbitration under a delegation clause must direct its challenge to the delegation provision specifically. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 71–72 (2010); Brennan v. Opus Bank, 796 F.3d 1125, 1132–33 (9th Cir. 2015). Where a challenge applies equally to the whole agreement and to the delegation provision, the court must address it. Coinbase, Inc. v. Suski, 602 U.S. 143, 151 (2024). Plaintiff states expressly that each challenge in Parts III.A, III.D and III.E is directed to the delegation sentence in § 10.A as well as to § 10 as a whole. If no agreement to arbitrate was formed because of a timely opt-out, no agreement to delegate was formed either; the delegation sentence cannot establish its own formation; it is part of the same document whose identity and version HireArt has not proved; and it covers "all disputes between me and the Company," so it does not by its terms reach the question whether a different defendant may compel arbitration. ECF No. 7-2 at 22.

**C. On This Record the Court Should Deny the Motion or Hold It in Abeyance, Order Production, Permit Limited Discovery, and Set a Hearing or Summary Trial Under 9 U.S.C. § 4**

Denial is appropriate because HireArt offered no evidence on the opt-out. If the Court instead finds a genuine dispute, it should not grant the motion on this record. Section 4 provides that if “the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.” 9 U.S.C. § 4. When there is a genuine dispute about formation, the court “must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved.” Hansen, 1 F.4th at 672. Courts faced with a sworn account of an opt-out and a contrary position from the party seeking arbitration have ordered targeted discovery, a hearing, or both, rather than ruling on the papers. Cabrera v. CVS Rx Servs., Inc., No. C 17-05803 WHA, 2018 WL 1367323 (N.D. Cal. Mar. 16, 2018) (ECF No. 45 at 4 n.1) (setting evidentiary hearing on “whether (or not) [the employee] opted out” and permitting each party, “on an expedited basis,” to “take one deposition and propound five document requests on this issue”); Mendez v. LoanMe, Inc., No. 20-cv-00002-BAS-AHG, 2020 WL 6741676 (S.D. Cal. Nov. 17, 2020) (ECF No. 17 at 2) (granting the party seeking arbitration limited discovery before the hearing on an opt-out letter “directly related to whether an arbitration agreement was formed”); Thomas, ECF No. 25 at 5–6; Garren, ECF No. 28 at 12.

Scale’s absence does not require delay. Scale removed this action through the same counsel as HireArt and was served on November 12, 2026, as shown in Part III.E. Because § 4 calls for prompt resolution, the production and discovery below should begin now. The hearing should go forward whether or not Scale has responded. If HireArt’s reply offers new evidence or new grounds, Plaintiff asks leave to respond within 14 days of the reply, and asks that the production requested below come before any ruling. See Schuster v. Scale AI, Inc., No. 3:25-cv-00620-JSC (N.D. Cal. Aug. 25, 2025) (ECF No.

28 at 5) (where defendants offered new evidence on reply, plaintiffs "have not had the opportunity to respond"; ordering the parties to confer on discovery "regarding the making of the agreement issue" and continuing the hearing); Taylor, 2025 WL 1474492 (Dkt. 45 at 4 n.2) (considering an unrepresented party's later evidence). Plaintiff therefore asks that the Court hold the motion in abeyance pending resolution of the formation dispute under 9 U.S.C. § 4, and:

(1) order HireArt, within 14 days, to produce (a) all messages, logs and records of the info@hireart.com mailbox, including any archive, deleted-items, spam or ticketing system it feeds, and the inbound fax log and images for +1-646-893-5981, for February 22 through March 31, 2024, that relate to Plaintiff under the names Charles Atchison or Charles Wallace or the addresses cha911@g.harvard.edu or charles.atchison@contractors.scale.com; (b) any opt-out log or record, any confirmation of receipt of an arbitration opt-out sent from those systems during that period, and HireArt's procedures for recording opt-outs and confirming their receipt; (c) a declaration stating what searches HireArt made and what they found; (d) every version of the arbitration agreement presented to Plaintiff, including the June 4, 2025 version, in native electronic form with metadata, with the complete electronic-signature or portal audit trail for each; and (e) HireArt's retention policies from February 2024 to the present for that mailbox, fax line and opt-out records, including any deletion applied to records from February 22 through March 31, 2024;

(2) permit limited discovery on formation, including targeted interrogatories identifying how and when Exhibit E came to display the name "Charles Wallace" above Plaintiff's "Charles Atchison" signature and what system or personnel generated that rendering, one deposition of the HireArt employee most knowledgeable about its opt-out and portal records and their retention, and discovery from Scale about the contractor email account; and

(3) after that production and discovery, set an evidentiary hearing or summary trial under 9 U.S.C. § 4 on any disputed formation issue. Plaintiff has demanded a jury trial of any such issue under 9 U.S.C. § 4 in a demand filed with this opposition.

HireArt's retention policies matter because the agreement names the info@hireart.com mailbox and a fax line as the places to send an opt-out, so that is where a timely opt-out would be recorded, and HireArt has not said whether its records for February and March 2024 still exist. ECF No. 7-2 at 23 (§ 10.A). Plaintiff seeks those policies so the Court can determine whether the records still exist; he does not ask the Court to decide now whether any were lost improperly.

**D. The Motion Reaches, at Most, Claims Against HireArt Arising From the Placement Period**

HireArt's motion is limited by its own evidence. Its declarant describes only the February 2024 onboarding and the placement "from on or around February 26, 2024, through October 3, 2025." ECF No. 7-2 ¶ 25. HireArt offers no evidence of any agreement covering Plaintiff's earlier contributor work on the Remotasks platform—work that ended on or about February 25, 2024, before the placement began, and for which payment records through February 27, 2024 are labeled "Paid by Outlier" (Wallace Decl. ¶ 2 & Ex. 2)—or his later direct employment by Scale (Wallace Decl. ¶ 4). HireArt offers no evidence that it was a party to either relationship. Its proposed order nonetheless would send "the claims asserted in this action" to arbitration. ECF No. 7-4 at 2. That overreaches.

Nothing in Exhibit E reaches back before Plaintiff received it. Its coverage language addresses disputes "regarding or relating to the services provided to Company or the Client," and disputes with the Company or its Clients "arising out of or relating to

the services," where the Client is "the Company's client to which I am assigned." ECF No. 7-2 at 22 (§ 10.A). It contains no language reaching past or pre-existing claims. Remotasks contributor work performed before the HireArt placement began was not "services provided to Company or the Client" within that language, because a Client is only a company "to which I am assigned," and Plaintiff was not then assigned by HireArt to any client. HireArt's own declarant says that Scale "separately sourced Plaintiff" and submitted his information to HireArt "to initiate onboarding on or around February 22, 2024." ECF No. 7-2 ¶ 7. After October 5, 2025, Plaintiff worked for Scale directly, not as a HireArt employee assigned to a client. HireArt has not tried to prove an agreement to arbitrate claims from either period, and as the party seeking arbitration it bears that burden. See Knutson, 771 F.3d at 565.

At a minimum, the motion must be denied as to (i) every claim pleaded against Scale alone, including the Second, Fourth, Fifth, Seventh and Eighth Causes of Action (ECF No. 1-1 at 13–16); (ii) every claim arising from the Remotasks contributor period or the direct-employment period; and (iii) every claim against Scale in the causes of action pleaded against both defendants, for the reasons in Part III.E.

**E. Scale Cannot Obtain Arbitration Through HireArt's Motion**

Scale has not moved to compel arbitration, and it is not a stranger to this case. Scale removed this action to this Court together with HireArt, in a notice filed by four attorneys as "Attorneys for Defendants SCALE AI, INC. and HIREART, INC." ECF No. 1 at 1–2, 6. Two of those attorneys filed this motion one week later as "Attorneys for Defendant HIREART, INC." alone. ECF No. 7 at 1–2. Scale did not join it. Scale has known of this action, and has been represented in it by the same firm, since at least October 29, 2026. ECF No. 1 ¶ 19 (Scale "is represented by the same firm"). Scale has filed no motion and no disclosure statement under Federal Rule of Civil Procedure 7.1; the statement filed with the removal discloses for HireArt only. ECF No. 2 at 2. HireArt

nonetheless argues that "Plaintiff Must Also Arbitrate His Claims Against HireArt's Unserved Client Scale AI, Inc." ECF No. 7-3 at 19. Section 4 permits a "party aggrieved" to petition for an order compelling arbitration. 9 U.S.C. § 4. HireArt may seek relief for itself; it cannot obtain an order on behalf of a co-defendant that has not asked for one. And any right Scale may claim depends on an agreement formed between Plaintiff and HireArt; if none was formed, there is nothing for Scale to enforce.

HireArt relies on the sentence in § 10.A stating that "Clients to which I am assigned, including 'Client' named above, are intended third party beneficiaries of this arbitration agreement and may directly enforce it." ECF No. 7-3 at 20 (quoting ECF No. 7-2 at 23). That sentence does not support the order HireArt seeks, for three reasons. First, a right to "directly enforce" the agreement is a right Scale must invoke for itself. In Harris and Michaelis, which HireArt cites for this point, and in Garcia, which it cites for its agency theory, the party that had not signed was before the court and was itself seeking arbitration or resisting it. Harris v. Superior Court, 188 Cal. App. 3d 475, 477 (1986) (plaintiffs moved to compel a physician who had answered the complaint); Michaelis v. Schori, 20 Cal. App. 4th 133, 135 (1993) (both physicians moved to compel); Garcia v. Pexco, LLC, 11 Cal. App. 5th 782, 785 (2017) (staffing agency and its client both moved). None decided the arbitration rights of a nonsignatory that was not before the court on the motion. Second, HireArt's own authority holds that "[a] third party beneficiary of a contract can gain no greater rights under that contract than the contracting parties." Harris, 188 Cal. App. 3d at 479. If no agreement to arbitrate was formed between Plaintiff and HireArt because Plaintiff opted out, Scale has nothing to enforce. Third, a third-party beneficiary "must take that contract as he finds it" and "cannot select the parts favorable to him and reject those unfavorable to him." Marina Tenants Ass'n v. Deauville Marina Dev. Co., 181 Cal. App. 3d 122, 132 (1986) (quoting Sanders v. Am. Cas. Co., 269 Cal. App. 2d 306, 310 (1969)). The sentence reaches only a Client "to which I am assigned," and the agreement describes that relationship as one in

which "the Company may assign me to provide services to its Client" and Plaintiff "will not be eligible to receive any kind of compensation or benefits from the Client." ECF No. 7-2 at 21. Scale was not such a Client before the placement began or after October 5, 2025, when it employed Plaintiff directly. Wallace Decl. ¶¶ 2–4 & Ex. 2.

Scale's absence from this motion was a choice. Two of the attorneys who removed this action for Scale also filed HireArt's memorandum, and that memorandum argues Scale's rights: it contends that "Scale is entitled to enforce the Arbitration Agreement, as a third-party beneficiary or under agency theory." ECF No. 7-3 at 21. Yet Scale has not moved to compel arbitration, under HireArt's agreement or under any agreement of its own. Granting HireArt's request as to Scale would give Scale two chances and no risk. If the Court compelled arbitration, Scale would take the benefit without having moved; if the Court declined, Scale, which is not the moving party, could move again. HireArt cites page 478 of Harris. ECF No. 7-3 at 20. On that same page, Harris rejected a reading that would give those who did not sign "an option . . . to choose arbitration or litigation and to impose that choice on any plaintiff." Harris, 188 Cal. App. 3d at 478. Where no motion to compel a co-defendant's claims is before the court, there is "no occasion to compel the claims against [that co-defendant] to arbitration." Haasbroek v. Princess Cruise Lines, Ltd., 286 F. Supp. 3d 1352, 1363 (S.D. Fla. 2017) (internal quotation marks and citation omitted).

If the Court reaches the question, it should hold that Scale has waived any right to compel arbitration under HireArt's agreement; Plaintiff asserts that waiver now. A party waives the right when it knows of an existing right to compel arbitration and intentionally acts inconsistently with that right, and no showing of prejudice is required. Armstrong v. Michaels Stores, Inc., 59 F.4th 1011, 1014–15 (9th Cir. 2023); Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022). Scale knows of the right that its own counsel claims for it. ECF No. 7-3 at 19–21. And Scale chose the judicial forum. It removed this action to this

Court without asking for arbitration, it was served on November 12, 2026, two weeks after it consented to and joined in removal, ECF No. 1 ¶ 19; ECF No. 1-1 ¶ 10, and, through counsel who filed HireArt's motion, it decided not to move. See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995) (a defendant that removed "without at the same time asking the district court for an order to arbitrate" thereby "manifested an intention to resolve the dispute through the processes of the federal court"). Scale's rights under HireArt's agreement should be decided now, on this motion, and not left for a second motion by Scale. Scale's counsel briefed Scale's asserted rights in HireArt's memorandum. Scale had every opportunity to join that motion or to file its own, under HireArt's agreement or under any agreement of its own, and it invoked no agreement of its own. It knows of one. The complaint that Scale removed alleges that Scale's September 19, 2025 offer letter contains a JAMS arbitration clause limited to the direct employment, and its first cause of action asks the Court to declare which writings, if any, require arbitration of which period of work. Compl. ¶¶ 5, 6, 25, 27 (ECF No. 1-1 at 8, 12–13). With that question pleaded against it, Scale removed the case, and its counsel then argued arbitration for it under HireArt's agreement alone. Scale has not invoked its own clause in this Court. That clause is not before the Court on this motion and could reach, at most, the direct-employment period; Plaintiff reserves waiver and every other objection as to it and as to any other agreement Scale may later invoke. No defendant has put before the Court any agreement for the period before the HireArt placement other than Exhibit E, which does not reach it (Part III.D). On November 18, 2026, twenty days after removal and the day before this opposition was due, counsel for Scale wrote to Plaintiff that Scale plans to file a motion to compel arbitration, under an agreement the email did not identify, and asked Plaintiff to stipulate; on the morning of November 19, 2026, Scale's counsel emailed three unauthenticated PDFs (including the same undated "Charles Wallace" rendering of HireArt's agreement) without a draft stipulation and at a meet-and-confer call that day confirmed that Scale intends to file that separate, second motion to compel arbitration. Wallace Decl. ¶ 15 &

Exs. 9–10. Scale thus confirms both that it knows of the right it claims and that it is attempting the very two-motion sequence this Court should not permit. And for the reasons in Part III.A, no arbitration agreement was formed with HireArt, and Exhibit E is not the document HireArt's declarant says it is; Scale's asserted right falls with it.

Scale is a named defendant that removed this action and was served with the summons and complaint on November 12, 2026. ECF No. 1 ¶ 19; ECF No. 1-1 at 3, ¶ 10 ("both Defendants consent to and join in removal"); Wallace Decl. ¶ 14 & Ex. 7. A state summons not served before removal cannot be served afterward "where the defendant has never been put on notice of the state court proceeding prior to removal." Beecher v. Wallace, 381 F.2d 372, 373 (9th Cir. 1967); see also Richards v. Harper, 864 F.2d 85, 87 (9th Cir. 1988) (following Beecher). That rule does not apply where the defendant served with a state summons after removal initiated or consented to the removal. Greenfield Advisors LLC v. Salas, 733 F. App'x 364, 367 (9th Cir. 2018) (mem.); accord CMB Infrastructure Grp. IX, LP v. Cobra Energy Inv. Fin., Inc., 572 F. Supp. 3d 950, 968–69 (D. Nev. 2021) (defendant that consented to removal); Dolan v. Nationstar Mortg. LLC, No. 25-cv-2242-GPC-BJW, 2025 WL 3649273, at *2–3 (S.D. Cal. Dec. 16, 2025) (defendants that removed). Scale is a served defendant with its own time to respond. Fed. R. Civ. P. 81(c)(2). Plaintiff also requested a summons from this Court, which the Clerk issued on November 16, 2026, ECF Nos. 11, 13, and federal law allows service to be completed after removal. 28 U.S.C. § 1448; Whidbee v. Pierce County, 857 F.3d 1019, 1023 (9th Cir. 2017). In any event, this motion does not turn on service: Scale's knowledge of this action, and its decision not to move, are shown by its own removal papers.

Whether a nonsignatory may enforce an arbitration agreement is a question for the court, unless the agreement clearly and unmistakably delegates that question as to the nonsignatory. Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1127–28 (9th Cir. 2013). A

nonsignatory may compel arbitration only if state contract law allows it. Id. at 1128. HireArt's motion, filed by the same firm that represents Scale, has put those questions before this Court. The Court should decide them now by denying arbitration of every claim against Scale on this motion and holding that Scale has waived any right to compel arbitration under HireArt's agreement.

**F. The Court Should Not Dismiss, and Any Stay Should Reach Only the Claims Compelled to Arbitration**

HireArt's memorandum asks the Court to "dismiss the proceedings or in the alternative, stay[]" them. ECF No. 7-3 at 22. Dismissal is not available on this record, for two reasons.

First, a magistrate judge may "conduct any or all proceedings" in a civil matter and "order the entry of judgment" only "[u]pon the consent of the parties." 28 U.S.C. § 636(c)(1); see Fed. R. Civ. P. 73(a). This Court's order likewise provides that the assigned magistrate judge may conduct all proceedings "with written consent of all parties." ECF No. 9 at 1. Plaintiff is filing his consent to magistrate judge jurisdiction with this opposition. As of the filing of this opposition, neither HireArt nor Scale, a named defendant, has filed a consent; the Clerk has set November 24, 2026 as the date for every party's consent or declination. ECF No. 10. All plaintiffs and defendants named in the complaint are parties for this purpose, "irrespective of whether the complaint has been properly served," and "jurisdiction cannot vest until the court has received consent from all parties to an action." Williams v. King, 875 F.3d 500, 501, 503–04 (9th Cir. 2017). Absent the consent of all named parties, including Scale, the assigned magistrate judge may not enter a dispositive order dismissing the action; at most, a magistrate judge designated by a district judge may submit proposed findings and recommendations for decision by a district judge. 28 U.S.C. § 636(b)(1)(B).

Second, if any claim is found arbitrable, the Federal Arbitration Act requires a stay on request. 9 U.S.C. § 3. When a party requests a stay pending arbitration, the court must stay the proceeding and lacks discretion to dismiss it on the ground that the claims are arbitrable. Smith v. Spizzirri, 601 U.S. 472, 475–78 & n.2 (2024). HireArt's notice asks for a stay (ECF No. 7 at 2), and Plaintiff requests one as to any claim compelled to arbitration. Any such claim should be stayed, not dismissed.

The stay should go no further than the claims compelled. Section 3 applies to an "issue referable to arbitration" and lasts "until such arbitration has been had." 9 U.S.C. § 3. In Spizzirri, the plaintiffs conceded that all of their claims were arbitrable. 601 U.S. at 474. Here, for the reasons in Parts III.D and III.E, HireArt's motion cannot reach the claims against Scale or the claims arising outside the placement period, and no arbitration of those claims would ever be "had." Federal arbitration law "requires piecemeal resolution when necessary to give effect to an arbitration agreement," and whether to stay litigation among nonarbitrating parties is a decision for the district court "as a matter of its discretion to control its docket." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 & n.23 (1983). If any claim is compelled, the Court should stay only the compelled claims under 9 U.S.C. § 3, and the remaining claims, including the claims against any party not compelled, should proceed. If the Court concludes that a broader stay is warranted, it should still stay and not dismiss, and its order should not preclude a motion for leave to add parties.

**IV. CONCLUSION**

The Court should deny HireArt's motion. If the Court finds any formation fact genuinely disputed, it should hold the motion in abeyance pending resolution of the formation dispute under 9 U.S.C. § 4; order HireArt to produce, within 14 days, the opt-out records, search declaration, agreement versions and retention policies described in Part III.C; permit limited formation discovery, including one deposition of HireArt's

records witness and discovery from Scale about the contractor email account; and then set an evidentiary hearing or summary trial under 9 U.S.C. § 4. If the Court compels arbitration of any claim, the order should be limited to Plaintiff's claims against HireArt arising from the placement from February 26, 2024 to on or about October 5, 2025; it should not reach any claim against Scale or any claim arising from the Remotasks contributor or direct-employment periods; and it should stay only the claims compelled under 9 U.S.C. § 3, rather than dismiss them, while the remaining claims, including the claims against any party not compelled, proceed. If the Court stays more than the compelled claims, it should stay and not dismiss them, and its order should not preclude a motion for leave to add parties. The Court should also hold that Scale has waived any right to compel arbitration under HireArt's agreement and that no claim against Scale is ordered to arbitration on this motion.

Dated: November 20, 2026

Respectfully submitted,

/s/ Charles Wallace
Charles Wallace
Plaintiff, In Propria Persona